IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA

| | |
|---|---|
| **CHRISTOPH MARQUETTE,** individually and on behalf of all others similarly situated,<br><br>*Plaintiff,*<br><br>*v.*<br><br>**HOMEADVISOR, INC.,** a Delaware registered corporation,<br><br>*Defendant.* | Case No.<br><br>**CLASS ACTION COMPLAINT**<br><br>**DEMAND FOR JURY TRIAL** |

## CLASS ACTION COMPLAINT

Plaintiff Christoph Marquette ("Marquette" or "Plaintiff") brings this Class Action Complaint and Demand for Jury Trial against Defendant HomeAdvisor, Inc. ("HomeAdvisor" or "Defendant") to stop Defendant from violating the Telephone Consumer Protection Act by making unsolicited calls to consumers, including consumers on the National Do Not Call registry ("DNC"), and to otherwise obtain injunctive and monetary relief for all persons injured by HomeAdvisor's conduct. Plaintiff, for his Complaint, alleges as follows upon personal knowledge as to himself and his own acts and experiences, and, as to all other matters, upon information and belief, including investigation conducted by his attorneys.

## PARTIES

1. Plaintiff Marquette is an Orlando, Florida resident.

2. Defendant HomeAdvisor is a Delaware corporation headquartered in Denver, Colorado with operational centers throughout the United States including Florida. HomeAdvisor conducts business throughout this District, Florida, and the United States.

## JURISDICTION AND VENUE

3. This Court has federal question subject matter jurisdiction over this action under 28 U.S.C. § 1331, as the action arises under the Telephone Consumer Protection Act, 47 U.S.C. §227 ("TCPA").

4. This Court has personal jurisdiction over Defendant and venue is proper in this District under 28 U.S.C. § 1391(b) because Plaintiff resides in this District and because Defendant operates operational centers in Florida, does significant business in this District, and because the wrongful conduct giving rise to this case related to Defendant's business in and was directed to this District.

## TELEMARKETING INTRODUCTION

5. The TCPA makes it unlawful "to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using an automatic telephone dialing system or an artificial or prerecorded voice…to any telephone number assigned to a…cellular telephone service." *See* 47 U.S.C. §227 (b)(1)(A)(iii).

6. According to findings by the Federal Communication Commission ("FCC"), the agency Congress vested with authority to issue regulations implementing the TCPA, such calls are prohibited because, as Congress found, automated or prerecorded telephone calls are a greater nuisance and invasion of privacy than live solicitation calls, and such calls can be costly and inconvenient.

7. While "prior express consent" is required for all automated and prerecorded calls, in 2013, the FCC required "prior express written consent" for all such telemarketing calls to wireless numbers and residential lines. Specifically, it ordered that:

> [A] consumer's written consent to receive telemarketing robocalls must be signed and be sufficient to show that the consumer: (1) received "clear and conspicuous disclosure" of the consequences of providing the requested consent, i.e. that the consumer will

2

>receive future calls that deliver prerecorded messages by or on behalf of a specific seller; and (2) having received this information, agrees unambiguously to receive such calls at a telephone number the consumer designates.[] In addition, the written agreement must be obtained "without requiring, directly or indirectly, that the agreement must be executed as a condition of purchasing any good or service.[]"

*In the Matter of Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 27 F.C.C. Rcd. 1830, 1844 (2012) (footnotes omitted).

8. "Telemarketing" is defined as "the initiation of a telephone call or message for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services, which is transmitted to any person." 47 C.F.R §64.1200(f)(12).

9. When Congress enacted the TCPA in 1991, it found that telemarketers called more than 18 million Americans every day. 105 Stat. 2394 at § 2(3).

10. By 2003, due to more powerful autodialing technology, telemarketers were calling 104 million Americans every day,. In re Rules and Regulations Implementing the TCPA of 1991, 18 FCC Rcd. 14014, ¶¶ 2, 8 (2003).

11. The problems Congress identified when it enacted the TCPA have only grown exponentially in recent years.

12. According to online robocall tracking service "YouMail," 3.6 billion robocalls were placed in July 2020 alone, at a rate of 117 million per day.[1]

13. The FCC also has received an increasing number of complaints about unwanted calls, with 150,000 complaints in 2016, 185,000 complaints in 2017, and 232,000 complaints in 2018. FCC, Consumer Complaint Data Center, www.fcc.gov/consumer-help-center-data.

---

[1] https://robocallindex.com/

14. "Robocalls and telemarketing calls are currently the number one source of consumer complaints at the FCC." Tom Wheeler, *Cutting off Robocalls* (July 22, 2016), statement of FCC chairman.[2]

15. "The FTC receives more complains about unwanted calls than all other complaints combined." Staff of the Federal Trade Commission's Bureau of Consumer Protection, *In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991,* Notice of Proposed Rulemaking, CG Docket No. 02-278, at 2 (2016).[3]

**HOMEADVISOR INSTRUCTS ITS SALES REPRESENTATIVES TO ENGAGE IN COLD CALLING TO GENERATE BUSINESS AND TO IGNORE DO NOT CALL REQUESTS**

16. HomeAdvisor provides an online service connecting homeowners with screened professionals for projects such as remodeling, contractor work and repair jobs.[4]

17. HomeAdvisor offers a membership program to business owners who are looking to grow their business using leads generated by HomeAdvisor.[5]

18. A HomeAdvisor Membership costs approximately $300 annually.[6]

19. In addition to the cost of membership, a business is charged for each lead that HomeAdvisor generates for them, which can cost an average of $15 to $60 per lead.[7]

20. In its job postings for an Inside Sales Representative, the job details state clearly that the job entails placing cold calls to businesses and that agents are expected to make about 200 dials each day to prospects:

---

[2] https://www.fcc.gov/news-events/blog/2016/07/22/cutting-robocalls
[3] https://www.ftc.gov/system/files/documents/advocacy_documents/comment-staff-ftc-bureau-consumer-protection-federal-communications-commission-rules-regulations/160616robocallscomment.pdf
[4] https://www.linkedin.com/company/homeadvisor/
[5] https://www.homeadvisor.com/spa/zip
[6] https://www.halsteadmedia.com/blog/your-homeadvisor-guide-should-you-be-advertising-on-there
[7] *Id.*

4



[8]

21.     As per the above job posting, leads are provided by HomeAdvisor itself to its sales representatives.

22.     HomeAdvisor employees have posted complaints online about the cold calling they were required to engage in. For example:

[9]

---

[8] https://www.indeed.com/cmp/Homeadvisor/jobs?jk=0f9efb64e00e43dd&start=0
[9] https://www.glassdoor.com/Reviews/HomeAdvisor-hours-of-talk-Reviews-EI_IE11291.0,11_KH12,25.htm

5

June 30, 2020



**"Just not the job for me."**

4.0 ★ ★ ★ ★ ☆   Current Employee - Sales Consultant in Golden, CO

I have been working at HomeAdvisor full-time for less than a year

**Pros**
Great work-life balance, awesome people, great benefits

**Cons**
Wasn't exactly the job I pictured it being. Almost completely cold-calling [10]

### I'm a sales agent with HomeAdvisor that spends all day cold calling contractors, AMA

Hey guys,

It's the beginning of the year, which means HomeAdvisor is cranking up calls to contractors and service professionals. I figured I'd reach out to try and answer questions about what HomeAdvisor does in an environment where I'm not trying to sell you something.

I see a lot of mixed opinions about HomeAdvisor, my goal here is to be as transparent as possible about anything I know without sugarcoating anything. [11]

    23.    To make matters worse, a HomeAdvisor employee posted a job review on Glassdoor claiming that he/she was instructed by management to continue calling consumers/businesses who asked for the calls to stop:

---

[10] *Id.*

[11] https://www.reddit.com/r/smallbusiness/comments/7sfyto/im_a_sales_agent_with_homeadvisor_that_spends_all/

6

> July 7, 2020                                                                 Helpful (
>
>  **"Good First Job"**
> 3.0 ★★★☆☆   Former Employee - Sales
>
> I worked at HomeAdvisor full-time
>
> **Pros**
> Superb training, they truly do invest in you.
> Very good Management.
> Cool incentives.
> Awesome location, offices, culture & coworkers .
> Transparent about the role.
> Good entry point to Sales & Online Marketing
> The service really does work.
>
> **Cons**
> 99% cold calling is tough and leads to a high turnover rate.
> Frustrating when sales don't get approved.
> Base salary is low.
> Pipeline management leading you to call the same prospect every day even after you put them on a "do not call" list
> Was told to exaggerate the demand in certain areas to make the service more desirable.
>
> **Advice to Management**
> Don't touch the "Do not call" list.[12]

24.     Another employee also posted on Glassdoor about how he/she was told by management to keep calling phone numbers where the employee was asked to stop calling:

> towards employees, management seems to be a little racist as well (in my opinion). They don't really have a "do not call list" because as an employee I ended up calling contractors, essentially harassing them because they had been asked to be put on the do not call list 10-20 times and I was still being told to pitch these people. Management has[13]

25.     Yet another HomeAdvisor agent acknowledged the fact that phone numbers are being called even after people asked for the calls to stop on Indeed stating,

"About 85% of the people that actually are crazy enough to answer an unknown number pulling up on caller ID have either taken care of the job or don't know why you've even called them (or

---

[12] *Id.*
[13] https://www.glassdoor.com.au/Reviews/Employee-Review-HomeAdvisor-RVW15464580.htm

why do you keep on calling them when they've repeatedly asked to be on Do Not Call list)… Often, in the 1 in 20 calls where someone picks up - you'll get an earful of complaints about why they haven't been taken off HA's [HomeAdvisor's] list."[14]

26. Unsurprisingly, there is a multitude of complaints posted online from consumers who received unsolicited calls from HomeAdvisor representatives, including complaints from people who continued to receive unsolicited calls even when they asked for the calls to stop. This is a small sampling of those complaints:

- "I have been telling them to stop calling for a couple of years I keep telling them stop calling they stop for a few months then start back up"[15]
- "… I get endless phone calls. I called their office and asked that the calls stop. The man on the phone said I would receive no more calls…"[16]
- "They call me a t least once a day! I get so many calls, I can't even use my phone anymore!"[17]
- "These people continue call me every day. I told them that I don't want to use their service…"[18]
- "Called me from 602-777-9014. left message about looking for a contractor for Maricopa county. Didn't say who they were…"[19]
- "Spam. They will email you, call you. What is the point as I'm not buying anything. Waste of time."[20]
- "The guy said he is brian from Home Advisor"[21]
- "i just got 3 calls from HOME ADVISOR started setting up everything to be a independent contractor of the company and ofcourse the phone gets disconnected during the "background" check and now the numbersss arent working. agent name Takdira Rahman…"[22]
- "I keep getting calls from a Latrice Shepherd asking for a painter contractor. She calls me everyday from the following numbers 717-675-6800 and 765-507-6129 and she leaves a voicemail saying to contact her back at 877-800-3177."[23]

---

[14] https://www.indeed.com/cmp/Homeadvisor/reviews?fcountry=US&floc=Golden%2C+CO
[15] https://homeadvisor.pissedconsumer.com/they-will-not-stop-calling-me-20130407398920.html
[16] *Id.*
[17] *Id.*
[18] *Id.*
[19] https://800notes.com/Phone.aspx/1-631-856-5225
[20] https://800notes.com/Phone.aspx/1-877-800-3177
[21] *Id.*
[22] *Id.*
[23] *Id.*

8

27. With sales representatives placing upwards of 200 unsolicited calls per day, it is crucial for HomeAdvisor to maintain a functional internal do not call list so consumers can unsubscribe from receiving unwanted calls.

28. HomeAdvisor made numerous unsolicited calls to Plaintiff's cell phone and left numerous voicemails, despite the fact that Plaintiff registered his cell phone with the DNC and despite Plaintiff's multiple requests for the calls to stop.

29. In response to these calls, Plaintiff files this lawsuit seeking injunctive relief, requiring Defendant to stop making pre-recorded voice sales calls to consumers without their consent, as well as an award of statutory damages to the members of the Class and costs.

## PLAINTIFF'S ALLEGATIONS

**HomeAdvisor Placed Unsolicited Calls to Plaintiff's Cell Phone Number Without His Consent, Despite Plaintiff Having His Phone Number Registered on the DNC, And Despite Requests for the Calls to Stop**

30. Plaintiff Marquette registered his cell phone number on the DNC on February 22, 2018.

31. Plaintiff's cell phone number has not been associated with a business and is used by Plaintiff for personal use only.

32. In October of 2019, Plaintiff applied for a job working as an employee for HomeAdvisor.

33. In response to the job application, a HomeAdvisor representative called the Plaintiff's cell phone number and tried to solicit him to enroll as a HomeAdvisor professional contractor – for which he would have to pay an annual fee and a per lead fee to HomeAdvisor.

34. Plaintiff was surprised that the HomeAdvisor representative was soliciting HomeAdvisor's services, as he applied for a job to become an employee of HomeAdvisor.

35. The representative called Plaintiff a second time towards the end of October to

9

solicit him again for a paid HomeAdvisor plan which includes a $300 annual membership fee and cost per lead fee from leads provided by HomeAdvisor.[24]

36. During this call, Plaintiff told the representative that he was not interested in doing business with HomeAdvisor.

37. Despite making it clear that he was not interested, Plaintiff continued to receive additional solicitation calls from HomeAdvisor.

38. When Plaintiff spoke with other live HomeAdvisor representatives, he told them that he was not interested and specifically asked for them to stop calling him. Plaintiff would then block the phone numbers that the representatives were calling from.

39. HomeAdvisor representatives have continued to place calls to Plaintiff at least twice monthly.

40. For example, Plaintiff received another unsolicited phone call from a HomeAdvisor representative to his cell phone on July 28, 2020 at 1:49 PM using phone number 407-618-1509.

41. Plaintiff did not answer this call, but a voicemail was left stating:

"Hi, this message is for Chris. My name is Kathleen with HomeAdvisor. I wanted to ask if you might be available, uh to do some garage door installations and um, to discuss the possibility of free membership and free leads. I just need somebody with some availability right now honestly. So, I just had a few questions if you wouldn't mind giving me a call back please, I'd appreciate it. My number is 407-618-1509. Thank you. Bye bye."

42. Plaintiff called 407-618-1509 on July 30, 2020 in order to ask yet again for the calls to stop, but the representative did not answer the call.

43. On July 31, 2020 at 9:17 AM, Plaintiff missed a call from Defendant using phone number 407-618-1509. A voicemail was left on Plaintiff's cell phone stating:

---

[24] Home Advisor charges around $300 per year for the basic service. Each of the leads sent to the contractors generates a variable fee, usually between $15 and $60+ per contractor and per lead.

"Hi, this message is for Chris. This is Kathleen with HomeAdvisor. I just had a missed call from you last night at about 7:00 and um just wanted to reach out and see if you would be available for garage door installations or repairs and just had a few questions. Give me a call please. 407-618-1509. Thank you. Bye bye."

44. On August 12, 2020 at 2:52 PM, Plaintiff received another unsolicited call from a HomeAdvisor agent.

45. The agent said she was calling from HomeAdvisor at the beginning of the call. Plaintiff told her that he was unable to speak and asked her to leave him a voicemail with her contact details in order to confirm that she did call from HomeAdvisor.

46. The agent did not call back.

47. Plaintiff never provided HomeAdvisor with consent to place solicitation calls to his cell phone number.

48. In addition, Plaintiff specifically asked for the calls to stop in October of 2019, but he received multiple solicitation calls from HomeAdvisor through July of 2020.

49. Defendant's unauthorized telephone calls harmed Plaintiff in the form of annoyance, nuisance, and invasion of privacy, and disturbed Marquette's use and enjoyment of his cell phone, in addition to the wear and tear on the phone's hardware (including the phone's battery) and the consumption of memory on the phone.

50. Seeking redress for these injuries, Marquette, on behalf of himself and Classes of similarly situated individuals, brings suit under the Telephone Consumer Protection Act, 47 U.S.C. § 227, *et seq.*, which prohibits unsolicited calls to residential phone numbers, as well as solicitation calls to residential phone numbers registered on the DNC.

## CLASS ALLEGATIONS

### Class Treatment Is Appropriate for Plaintiff's TCPA Claims Arising From Calls Made by HomeAdvisor

51. Plaintiff brings this action pursuant to Federal Rule of Civil Procedure 23(b)(2) and Rule 23(b)(3) on behalf of himself and all others similarly situated and seeks certification of the following Classes:

> **Do Not Call Registry Class**: All persons in the United States who from four years prior to the filing of this action through class certification (1) Defendant (or an agent acting on behalf of Defendant) called more than one time, (2) within any 12-month period, (3) where the person's telephone number had been listed on the National Do Not Call Registry for at least thirty days, (4) for substantially the same reason Defendant called Plaintiff, and (5) for whom Defendant claims (a) it obtained prior express written consent in the same manner as Defendant claims it supposedly obtained prior express written consent to call Plaintiff, or (b) it did not obtain prior express written consent.
>
> **Internal Do Not Call Registry Class**: All persons in the United States who from four years prior to the filing of this action through class certification (1) Defendant (or an agent acting on behalf of Defendant) called more than one time, (2) within any 12-month period, (3) for substantially the same reason Defendant called Plaintiff.

52. The following individuals are excluded from the Classes: (1) any Judge or Magistrate presiding over this action and members of their families; (2) Defendant, their subsidiaries, parents, successors, predecessors, and any entity in which Defendant or its parents have a controlling interest and their current or former employees, officers and directors; (3) Plaintiff's attorneys; (4) persons who properly execute and file a timely request for exclusion from the Classes; (5) the legal representatives, successors or assigns of any such excluded persons; and (6) persons whose claims against Defendant have been fully and finally adjudicated and/or released. Plaintiff anticipates the need to amend the Class definitions following appropriate discovery.

53. **Numerosity**: On information and belief, there are hundreds, if not thousands of members of the Classes such that joinder of all members is impracticable.

54. **Commonality and Predominance**: There are many questions of law and fact common to the claims of Plaintiff and the Classes, and those questions predominate over any questions that may affect individual members of the Classes. Common questions for the Classes include, but are not necessarily limited to the following:

    (a) whether Defendant placed calls to Plaintiff and members of the Class who had their phone numbers registered on the DNC;

    (b) whether Defendant placed calls to Plaintiff and members of the Classes without first obtaining consent to make the calls;

    (c) whether Defendant continued to place calls to Plaintiff and members of the Class after being told to stop calling;

    (d) whether Defendant maintains a functional internal do not call system in order to stop calling consumers such as Plaintiff and members of the Class who asked for the calls to stop;

    (e) whether Defendant's conduct constitutes a violation of the TCPA; and

    (f) whether members of the Classes are entitled to treble damages based on the willfulness of Defendant's conduct.

55. **Adequate Representation**: Plaintiff will fairly and adequately represent and protect the interests of the Classes, and has retained counsel competent and experienced in class actions. Plaintiff has no interests antagonistic to those of the Classes, and Defendant has no defenses unique to Plaintiff. Plaintiff and his counsel are committed to vigorously prosecuting this action on behalf of the members of the Classes, and have the financial resources to do so. Neither Plaintiff nor his counsel have any interest adverse to the Classes.

56. **Appropriateness**: This class action is also appropriate for certification because Defendant has acted or refused to act on grounds generally applicable to the Classes and as a whole, thereby requiring the Court's imposition of uniform relief to ensure compatible standards of conduct toward the members of the Classes and making final class-wide injunctive relief appropriate. Defendant's business practices apply to and affect the members of the Classes

uniformly, and Plaintiff's challenge of those practices hinges on Defendant's conduct with respect to the Classes as wholes, not on facts or law applicable only to Plaintiff. Additionally, the damages suffered by individual members of the Classes will likely be small relative to the burden and expense of individual prosecution of the complex litigation necessitated by Defendant's actions. Thus, it would be virtually impossible for the members of the Classes to obtain effective relief from Defendant's misconduct on an individual basis. A class action provides the benefits of single adjudication, economies of scale, and comprehensive supervision by a single court.

**FIRST CAUSE OF ACTION**
**Telephone Consumer Protection Act**
**(Violation of 47 U.S.C. § 227)**
**(On Behalf of Plaintiff and the Do Not Call Registry Class)**

57. Plaintiff repeats and realleges the paragraphs 1 through 56 of this Complaint and incorporates them by reference herein.

58. The TCPA's implementing regulation, 47 C.F.R. § 64.1200(c), provides that "[n]o person or entity shall initiate any telephone solicitation" to "[a] residential telephone subscriber who has registered his or her telephone number on the national do-not-call registry of persons who do not wish to receive telephone solicitations that is maintained by the federal government."

59. Any "person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection may" may bring a private action based on a violation of said regulations, which were promulgated to protect telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object. 47 U.S.C. § 227(c).

60. Defendant violated 47 C.F.R. § 64.1200(c) by initiating, or causing to be initiated, telephone solicitations to telephone subscribers such as Plaintiff and the Do Not Call Registry Class members who registered their respective telephone numbers on the National Do Not Call

14

Registry, a listing of persons who do not wish to receive telephone solicitations that is maintained by the federal government.

61.     Defendant violated 47 U.S.C. § 227(c)(5) because Plaintiff and the Do Not Call Registry Class received more than one telephone call in a 12-month period made by or on behalf of Defendant in violation of 47 C.F.R. § 64.1200, as described above. As a result of Defendant's conduct as alleged herein, Plaintiff and the Do Not Call Registry Class suffered actual damages and are entitled to up to $1,500 in damages for each violation.

**SECOND CAUSE OF ACTION**
**Telephone Consumer Protection Act**
**(Violations of 47 U.S.C. § 227)**
**(On Behalf of Plaintiff and the Internal Do Not Call Class)**

62.     Plaintiff repeats and realleges paragraphs 1 through 56 of this Complaint and incorporates them by reference.

63.     Under 47 C.F.R. § 64.1200(d), "[n]o person or entity shall initiate any call for telemarketing purposes to a residential telephone subscriber unless such person or entity has instituted procedures for maintaining a list of persons who request not to receive telemarketing calls made by or on behalf of that person or entity. The procedures instituted must meet the following minimum standards:

> (1) Written policy. Persons or entities making calls for telemarketing purposes must have a written policy, available upon demand, for maintaining a do-not-call list.
>
> (2) Training of personnel engaged in telemarketing. Personnel engaged in any aspect of telemarketing must be informed and trained in the existence and use of the do-not-call list.
>
> (3) Recording, disclosure of do-not-call requests. If a person or entity making a call for telemarketing purposes (or on whose behalf such a call is made) receives a request from a residential telephone subscriber not to receive calls from that person or entity, the person or entity must record the request and place the subscriber's name, if provided, and telephone number on the do-not-call list at the time the request is made. Persons or entities making calls for telemarketing purposes (or on whose behalf such calls are made) must honor a residential

15

subscriber's do-not-call request within a reasonable time from the date such request is made. This period may not exceed thirty days from the date of such request. If such requests are recorded or maintained by a party other than the person or entity on whose behalf the telemarketing call is made, the person or entity on whose behalf the telemarketing call is made will be liable for any failures to honor the do-not-call request. A person or entity making a call for telemarketing purposes must obtain a consumer's prior express permission to share or forward the consumer's request not to be called to a party other than the person or entity on whose behalf a telemarketing call is made or an affiliated entity.

(4) Identification of sellers and telemarketers. A person or entity making a call for telemarketing purposes must provide the called party with the name of the individual caller, the name of the person or entity on whose behalf the call is being made, and a telephone number or address at which the person or entity may be contacted. The telephone number provided may not be a 900 number or any other number for which charges exceed local or long distance transmission charges.

(5) Affiliated persons or entities. In the absence of a specific request by the subscriber to the contrary, a residential subscriber's do-not-call request shall apply to the particular business entity making the call (or on whose behalf a call is made), and will not apply to affiliated entities unless the consumer reasonably would expect them to be included given the identification of the caller and the product being advertised.

(6) Maintenance of do-not-call lists. A person or entity making calls for telemarketing purposes must maintain a record of a consumer's request not to receive further telemarketing calls. A do-not-call request must be honored for 5 years from the time the request is made.

64.   Defendant placed solicitation calls to Plaintiff and members of the Internal DNC Class without implementing internal procedures for maintaining a list of persons who request not to be called by the entity and/or by implementing procedures that do not meet the minimum requirements to allow Defendants to initiate telemarketing calls. 47 C.F.R. 64.1200(d)(1)-(6).

65.   The TCPA provides that any "person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection may" bring a private action based on a violation of said regulations, which were promulgated to protect telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object. 47 U.S.C. § 227(c)(5).

66. Defendant has, therefore, violated 47 U.S.C. § 227(c)(5). As a result of Defendant's conduct, Plaintiff and the other members of the Internal Do Not Call Class are each entitled to up to $1,500 per violation.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff Marquette, individually and on behalf of the Class, prays for the following relief:

a) An order certifying the Class as defined above; appointing Plaintiff as the representative of the Class; and appointing his attorneys as Class Counsel;

b) An award of actual and/or statutory damages for the benefit of Plaintiff and the Class;

c) An order declaring that Defendant's actions, as set out above, violate the TCPA;

d) An injunction requiring Defendant to cease all unsolicited calling activity, and to otherwise protect the interests of the Class; and

e) Such further and other relief as the Court deems just and proper.

## JURY DEMAND

Plaintiff requests a jury trial.

Respectfully Submitted,

**CHRISTOPH MARQUETTE**, individually and on behalf of those similarly situated individuals

Dated: August 16, 2020               By: */s/ Stefan Coleman*

Stefan Coleman (FL Bar No. 30188)
law@stefancoleman.com
LAW OFFICES OF STEFAN COLEMAN, P.A.
201 S. Biscayne Blvd, 28th Floor
Miami, Fl 33131
Telephone: (877) 333-9427
Facsimile: (888) 498-8946

Avi R. Kaufman (FL Bar No. 84382)
kaufman@kaufmanpa.com
KAUFMAN P.A.

400 NW 26th Street
Miami, FL 33127
Telephone: (305) 469-5881
*Trial Counsel*

*Attorneys for Plaintiff and the putative Classes*